1  Adam C. McCall (SBN 302130)
   amccall@zlk.com
2  **LEVI & KORSINSKY, LLP**
3  445 South Figueroa Street, 31st Floor
   Los Angeles, California 90025
4  Telephone: (213) 985-7290
   Facsimile: (202) 333-2121
5

6  *Attorneys for Plaintiff*

7  [Additional counsel on signature page]
8

9  **UNITED STATES DISTRICT COURT**
10
11 **CENTRAL DISTRICT OF CALIFORNIA**

12 TONY RAMIREZ,                              ) Case No. 18-cv-06309
13                                            )
                    Plaintiff,                ) **CLASS ACTION COMPLAINT FOR**
14          vs.                               ) **VIOLATIONS OF FEDERAL**
15                                            ) **SECURITIES LAWS**
   MARATHON PATENT GROUP INC.,                )
16 DOUG CROXALL, EDWARD KOVALIK,              ) **JURY TRIAL DEMANDED**
   CHRISTOPHER       ROBICHAUD,               )
17 RICHARD TYLER, AND RICHARD                 )
18 CHERNICOFF,                                )
                                              )
19                  Defendants.                )
20                                            )

Plaintiff Tony Ramirez ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to those allegations pertaining to its own knowledge and conduct, which is made on personal knowledge:

## INTRODUCTION

1. Plaintiff asserts this action for violating federal securities laws to remedy false and misleading disclosures made by Marathon Patent Group Inc. ("Marathon" or the "Company") and its Board of Directors (the "Board) in a proxy statement issued in connection with the Company's 2017 annual meeting of stockholders (the "Annual Meeting").

2. On June 8, 2017, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the Securities and Exchange Commission (the "SEC") for the Annual Meeting. In the Proxy, the Board asked Marathon's stockholders to approve an amendment to the Company's Articles of Incorporation so that the Board could implement a reverse stock split (the "Reverse Stock Split Proposal").

3. The Proxy affirmatively represented that banks and brokers could not vote shares that they held on behalf of someone else in connection with the Reverse Stock Split Proposal unless that party directed the banks or brokers how to vote. As stated in the Proxy, any shares held by banks and brokers on behalf of another for which that party did not give voting instructions would be counted as a "broker non-vote" and treated as a "No" vote with respect to the Reverse Stock Split Proposal.

4. However, in truth, the banks and brokers had discretion to cast votes without any instructions from the actual stockholders, and the Company counted broker non-votes as "Yes" votes.

5. As such, the Proxy was materially false and misleading. The proxy solicitation prevented Marathon's stockholders from making informed decisions about whether to approve the Reverse Stock Split Proposal. On the basis of these false and misleading disclosures, Marathon stockholders purported voted to approve the proposal with 12.4 million "Yes" votes (with the majority being broker non-votes) and 4.2 million "No" votes.

6. Had the vote concerning the Reverse Stock Split Proposal been tabulated as represented in the Proxy, the Reverse Stock Split Proposal would not have been approved. If the broker non-votes were properly counted as "No" votes, the Reverse Stock Split Proposal would only have received approximately 3.8 million "For" votes versus approximately 13 million "Against" votes.

7. Because of the above misconduct, the Company's stockholders have been harmed.

8. Accordingly, Plaintiff brings this action seeking a cancellation of the amendment to the Articles of Incorporation that was adopted at the Annual Meeting on the basis of the materially false and misleading representations made by the Board, and a rescission of the Reverse Stock Split that was implemented following the Annual Meeting.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

10. Venue is proper because many of the acts and conduct complained of herein occurred in this District and Marathon is headquartered in this District.

## PARTIES

11. Plaintiff is a Marathon stockholder and has held Marathon stock at all relevant times.

12. Defendant Marathon is a Nevada corporation with its principle executive offices located at 11100 Santa Monica Blvd., Ste. 380, Los Angeles, CA. Marathon operates in the cryptocurrency market, as well as licensing its IP assets.

13. Defendant Doug Croxall was the Company's chairman and chief executive officer and served as a director of the Company between November 2012 and December 2017.

14. Defendant Edward Kovalik served as a director between April 2014 and June 2018.

15. Defendant Christopher Robichaud served as a director between September 2016 and June 2018.

16. Defendant Richard Tyler served as a director between March 2015 and August 2017.

17. Defendant Richard Chernicoff served as a director between March 2015 and August 2017.

18. Defendants Croxall, Kovalik, Robichaud, Tyler, and Chernicoff are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

19. On June 8, 2017, the Company filed the Proxy with the SEC for the Company's Annual Meeting. Per the Proxy, as of the record date of the Meeting, the Company had a total of 24,039,472 shares of common and preferred stock issued and outstanding.

20. In the Proxy, the Board sought stockholder approval of the Reverse Stock Split Proposal (proposal number one in the Proxy), which would authorize the Company's Board of Directors (the "Board") to amend the Company's Articles of Incorporation to implement a reverse stock split of its capital stock, at a ratio within the range of 1-for-4 to 1-for-25 at any time prior to March 31, 2018. The Board recommended that stockholders approve the amendment.

21. As disclosed in the Proxy, in order for the Reverse Stock Split Proposal to be approved, a majority of all stockholders (not just a majority of the votes cast) had to vote "Yes." In other words, in order for the Reverse Stock Split Proposal to be approved, 12,019,739 shares had to vote in favor of it.

22. Specifically, the Company told stockholders that:

> The affirmative vote of the holders of Shares representing a majority of all of the Company's Shares entitled to vote as of the Record Date is required to approve the amendment to our restated certificate of incorporation to implement a reverse stock split. Abstentions and broker non-votes will be counted towards the tabulation of votes cast on this proposal and will have the same effect as a negative vote. Brokerage firms do not have authority to vote customers' un-voted Shares held by the firms in street name on this proposal.

23. A broker non-vote occurs in connection with shares held by a stockholder in "street name," *i.e.*, the stockholder's stock is held by bank or broker, with the bank or broker

actually being the stock's record holder. To vote shares held in street name, a stockholder instructs the bank or broker how to the vote.

24. Under the New York Stock Exchange rules, which apply to brokers generally, if a stockholder does not give voting instructions to the bank or broker, the bank or broker has the authority to vote the shares using their discretion on "routine" proposals but not "non-routine" proposals. As represented in the Proxy, the Reverse Stock Split Proposal was a non-routine proposal, and banks and brokers did "not have authority to vote customers' un-voted shares held by the firms in street name on" it.

25. Commonly a broker non-vote will not be counted and will have no impact on a vote. However, where a proposal must be affirmatively approved by a majority of all stockholders, such as the Reverse Stock Split Proposal, broker non-votes are treated as "No" votes.

26. In addition seeking stockholder approval of the Reverse Stock Split Proposal, the Company also sought stockholder approval of proposals: (1) to allow the Company to issue securities in non-public offerings for up to 25% below market price; (2) to allow the Company to issue securities in non-public offerings for up to 15% below market price; and (3) to approve any change of control that could result from the potential issuance of below market securities in the other proposals (the "Additional Proposals").

27. In contrast with the Reverse Stock Split Proposal, the Company disclosed that each of Additional Proposals required only the affirmative vote of a majority of the votes cast in order for the respective proposal to be approved. As such, any broker non-votes cast would not have an impact on the vote. In the Proxy, the Company disclosed:

> These so-called 'broker non-votes' will be included in the calculation of the number of votes considered to be present at the meeting for purposes of determining a quorum, but will not be considered in determining the number of votes necessary for approval of any of the proposals and will have no effect on the outcome of any of the proposals other than the approval of the amendment to our articles of incorporation [the Proposal] to provide for the reverse split.

28. On July 20, 2017, the Company filed a Form 8-K with the SEC in which it announced the purported final results of the Meeting. A total of 16,878,678 shares were present and accounted for at the Annual Meeting.

29. A summary of the reported results are below:

| Proposal | Votes Cast | | | | |
|---|---|---|---|---|---|
| | For | Against | Abstain | Broker Non-Vote | Total |
| Reverse Stock Split Proposal | 12,438,389 | 4,200,397 | 239,892 | 0 | 16,878,678 |
| Sell Securities at a 25% Discount | 5,824,689 | 2,254,658 | 194,425 | 8,604,906 | 16,878,678 |
| Sell Securities at a 15% Discount | 6,247,744 | 1,940,577 | 85,451 | 8,604,906 | 16,878,678 |
| Change of Control | 5,826,609 | 2,310,630 | 136,533 | 0 | 8,273,772 |

30. As demonstrated above, the number of votes purportedly cast in favor of the Reverse Stock Split Proposal and the complete lack of any broker non-votes stand in stark contrast with the votes cast with respect to the Additional Proposals at the Meeting. Although there were purportedly no broker non-votes for the Reverse Stock Split Proposal, there were exactly 8,604,906 broker non-votes cast for the Additional Proposals to authorize the Board to sell securities at a discount.[1]

31. These reported results are simply not possible if the Company tallied the votes as it represented to stockholders it would. It is inconceivable that the beneficial owners of exactly 8,604,906 shares of common stock instructed their brokers, banks, or other nominees to vote their shares "For" the Reverse Stock Split Proposal while simultaneously failing to provide

---

[1] It is not clear why the reported total is less for the Change of Control proposal than the others. The most likely explanation is that the Company erroneously failed to report the broker non-votes for the Change of Control proposal. Assuming that the Change of Control proposal had 8,604,906 broker non-votes like the other two additional proposals, it means that its actual total is 16,878,678, which is the same as the other proposals.

similar instructions—or, indeed, providing any instruction at all—with respect to the Additional Proposals.

32. As such, the Board misrepresented to stockholders as to how the votes cast with respect to the Reverse Stock Split Proposal would be counted.

33. Stockholders have the right to cast fully informed votes based on truthful proxy solicitations from their fiduciaries. How a vote is to be counted is the most fundamental information that a reasonable Marathon stockholder would have found important in determining whether to approve the Reverse Stock Split Proposal. As represented in the Proxy, a stockholder's non-vote should have had no impact on the vote. However, in truth, a stockholder's non-vote was actually a "Yes" vote, and served to pass the Reverse Stock Split Proposal.

34. Had the vote concerning the Reverse Stock Split Proposal been tabulated as represented in the Proxy, the Reverse Stock Split Proposal would not have been approved. If the broker non-votes were properly counted as "Against" votes, the Reverse Stock Split Proposal would only have received approximately 3.8 million "For" votes versus approximately 13 million "Against" votes.

35. Relying on the improper stockholder vote, on October 30, 2017, the Company effectuated a reverse stock split at a ratio of 1-for-4.

36. On January 31, 2018, Plaintiff sent a demand letter to Marathon's Board raising the issues identified in this Complaint and demanding that the Board take action to address them. The Board did not respond or take any action.

## CLASS ACTION ALLEGATIONS

37. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on his own behalf and as a class action on behalf of those who held Marathon stock as of the close of business on June 6, 2017, which was the record date for stockholders entitled to vote at the Annual Meeting (the "Class"). Defendants are excluded from the Class, as are Defendants' affiliates, immediate families, legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

38. This action is properly maintainable as a class action.

39. The Class is so numerous that joinder of all members is impracticable. The Company had 24,039,472 shares outstanding as of June 6, 2017. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, upon information and belief, there are thousands of members in the Class.

40. Questions of law and fact are common to the Class, including, *inter alia*, the following:

    a. whether the Proxy contained materially false and misleading statements, or omitted information necessary to render them not misleading; and

    b. whether Plaintiff and the other members of the Class have been or will be harmed by the wrongs complained of herein.

41. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class. All Marathon stockholders were forced to cast an uninformed vote as a result of the materially false and misleading Proxy. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

42. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

43. Defendants have acted, and refused to act, on grounds that apply generally to the Class, and are causing injury to the Class, such that final injunctive or declaratory relief is appropriate on behalf of the Class as a whole.

44. The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## COUNT I
### Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against All Defendants

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. Defendants issued, caused to be issued, and participated in the issuance of materially false and misleading written statements to stockholders which were contained in the Proxy. The Proxy contained the Reverse Stock Split Proposal. The Proxy, however, misrepresented and failed to disclose how the vote would be counted. In the Proxy, Defendants falsely represented that broker non-votes would count as "No" votes with respect to the proposal. In truth, however, brokers non-votes did not count as "No" votes and brokers had discretion to vote the shares they held on behalf of another

47. By reasons of the conduct alleged herein, the Defendants, which includes the Company and the directors that caused or allowed the issuance of the Proxy, violated section 14(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Marathon misled and/or deceived its stockholders by falsely portraying how the votes concerning the Reverse Stock Split Proposal would be counted.

48. This information would have been material to Marathon's stockholders in determining how to vote with respect to the Reverse Stock Split Proposal.

49. Plaintiff thereby seeks relief for damages inflicted upon the stockholders in connection with the improper approval of the Reverse Stock Split based upon the misleading and incomplete Proxy. Plaintiff also seeks to void the Reverse Stock Split.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.    A declaration that the Proxy was materially false and misleading;

C.    Rescinding the amendment to the Articles of Incorporation that purportedly was adopted on the basis of the false and misleading Proxy;

D.    Rescinding the Reverse Stock Split that was implemented following the Annual Meeting;

E.    Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' wrongdoing, plus pre-judgment and post-judgment interest;

F.    Equitable and/or injunctive relief as necessary or permitted by law and equity;

G.    Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

H.    Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 20, 2018                     **LEVI & KORSINSKY, LLP**

                                             By:   /s/ Adam C. McCall
                                           Adam C. McCall (SBN 302130)
                                           445 South Figueroa Street, 31st Floor
                                           Los Angeles, California 90025
                                           Telephone: (213) 985-7290
                                           Facsimile: (202) 333-2121

|   |   |
|---|---|
| 1 |  |
| 2 | **OF COUNSEL** |
| 3 |  |
| 4 | **LEVI & KORSINSKY, LLP** |
|   | Joseph Levi |
| 5 | Amy Miller (to be admitted *pro hac vice*) |
|   | William J. Fields (to be admitted *pro hac vice*) |
| 6 | Samir Shukurov |
| 7 | LEVI & KORSINSKY, LLP |
|   | 30 Broad Street, 24th Floor |
| 8 | New York, New York 10004 |
|   | Tel: (212) 363-7500 |
| 9 | Fax: (212) 363-7171 |
| 10 |  |
| 11 | *Attorneys for Plaintiff* |